No. 08-2161

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

## FRIENDS OF THE LAKEVIEW SCHOOL DISTRICT
## INCORPORATION NO. 25 OF PHILLIPS COUNTY, et al.

### Appellants

### v.

## MIKE HUCKABEE in his official capacity, as Governor
## Of the State of Arkansas

### Appellees

---

## On Appeal from the United States District Court
## For the Eastern District of Arkansas
## Honorable Judge William R. Wilson, Jr.

---

## BRIEF OF APPELLEES

---

**DUSTIN McDANIEL**
**Attorney General**

By: Matthew McCoy, ABA # 2001165
    Assistant Attorney General
    323 Center Street
    1100 Catlett-Prien Tower Building
    Little Rock, AR 72201-2610
    Telephone: (501) 682-1319
    Counsel for Appellees

## SUMMARY OF THE CASE

This is a 14th Amendment equal protection and due process case facially challenging the *Arkansas Public Education Reorganization Act*, ACT 60 OF 2003 (2nd Extra. Sess.) ("ACT 60"). Act 60 requires administrative consolidation/annexation of public school districts serving fewer than 350 students. Appellants, the Friends of Lake View ("FOL"), sued because their district, which was well under 350 students, was administratively consolidated with another district over four years ago on May 28, 2004.

FOL alleged that ACT 60 is facially unconstitutional because it involves education, somehow discriminates against African-Americans, and is not narrowly tailored to serve a compelling interest.[1] The district court properly rejected these arguments because FOL has no right, fundamental or otherwise, to a particular administrative structure for their school district. ACT 60 is race-neutral and has no discriminatory impact or purpose. Act 60 requires consolidation of the smallest school districts in the State, regardless of their racial make-up. In fact, ACT 60 has primarily resulted in the closure of predominately white school districts. The State of Arkansas has a legitimate, if not compelling, interest in the efficient administration of its public education system. ACT 60 is rationally related to that end.

---

[1]     FOL made other allegations below, but they were abandoned by Appellants in their brief on appeal.

The briefs adequately present the arguments and authority and oral argument is not necessary. If oral argument is granted, the State of Arkansas submits that ten (10) minutes is sufficient to present the issues.

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF THE CASE ................................................................... i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ................................................................ v

JURISDICTIONAL STATEMENT ...................................................... xii

STATEMENT OF THE ISSUES ........................................................ xiii

STATEMENT OF THE FACTS .......................................................... 1

SUMMARY OF THE ARGUMENT .................................................... 6

ARGUMENT ..................................................................................... 8

I.    APPELLANTS' 14TH AMENDMENT EQUAL PROTECTION CLAIM IS FATALLY DEFECTIVE BECAUSE ACT 60 IS RACE-NEUTRAL ON ITS FACE AND DOES NOT IMPLICATE ANY FUNDAMENTAL RIGHT ...................................................................................... 8

II.   APPELLANTS' 14TH AMENDMENT DUE PROCESS CLAIM IS FATALLY DEFECTIVE BECAUSE APPELLANTS HAVE NO RIGHT TO LOCALLY CONTROL THE STATE PUBLIC EDUCATION SYSTEM, WERE AFFORDED CONSTITUTIONAL PROCESS WHERE NONE WAS DUE AND FAILED TO EXHAUST STATE LAW REMEDIES .................................... 16

III.  ALL OF APPELLANTS' CLAIMS ARE BARRED BY *ROOKER-FELDMAN* AND *RES JUDICATA* BECAUSE THEY ARE INEXTRICABLY INTERTWINED WITH THE CLAIMS BROUGHT IN *LAKE VIEW V. HUCKABEE,* 358 ARK. 137, 189 S.W.3d 1 (2004) ................................ 21

IV.  **APPELLANTS' CLAIMS AGAINST THE STATE OF ARKANSAS AND ITS OFFICIALS ARE BARRED BY SOVEREIGN IMMUNITY** ...................................................................... 29

CONCLUSION ...................................................................................................... 30

CERTIFICATE OF COMPLIANCE ...................................................................... 31

CERTIFICATE OF SERVICE ............................................................................... 32

ADDENDUM........................................................................................................ Add. 1

# TABLE OF AUTHORITIES

**CASES**                         **PAGE**

## UNITED STATES SUPREME COURT CASES

*Allen v. McCurry,*
  449 U.S. 90 (1980).................................................27

*Armstrong v. Manzo,*
380 U.S. 545 (1965)................................................19

*Brown v. Felsen,*
442 U.S. 127 (1979)...........................................26, 27

*Daniels v. Williams,*
474 U.S. 327 (1986)................................................20

*D.C. Ct. of Appeals v. Feldman,*
460 U.S. 462 (1983)...........................................22, 25

*Ex parte Young,*
209 U.S. 123 (1908)................................................29

*Exxon Mobil Corp. v. Saudi Basic Indus.,*
544 U.S. 280 (2005)................................................24

*FCC v. Beach Comm., Inc.,*
508 U.S. 307 (1993).......................................13, 14, 15

*Hart Steel Co. v. R.R. Supply Co.,*
244 U.S. 294 (1917)................................................27

*Hudson v. Palmer,*
468 U.S. 517 (1984)................................................20

*Jefferson v. Hackney,*
406 U.S. 535 (1972)................................................15

*Kadrmas v. Dickinson Public Sch,*
487 U.S. 450 (1988)............................................................ 8

*Kentucky v. Graham,*
473 U.S. 159 (1985)....................................................... xiii, 29

*Meyers v. Bethlehem Ship Bldg. Corp.,*
303 U.S. 41 (1938) ............................................................ 21

*Parklane Hosiery Co. v. Shore,*
439 U.S. 322 (1979) .......................................................... 27

*Parratt v. Taylor,*
451 U.S. 527 (1981) .......................................................... 20

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ...................................................... xiii, 29

*Sailors v. Kent Bd. of Edu.,*
387 U.S. 105 (1967) ..................................................... 10, 18

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
411 U.S. 1 (1973) .................................................... xiii, 9, 15

*Town of Castle Rock v. Gonzales,*
545 U.S. 748 (2005) .......................................................... 16

*Tillman v. Wheaton-Haven Rec. Ass'n, Inc.,*
410 U.S. 431 (1973) .......................................................... 29

**EIGHTH CIRCUIT COURT OF APPEALS CASES**

*African-American Voting Rights Legal Defense Fund, Inc. v. State of Mo.,*
944 F.3d 1105, *aff'd*, 133 F.3d 921 (8th Cir. 1998)................. 10

*Anderson v. Larson*, 327 F.3d 762 (8th Cir. 2003) ........................... 4, 29

*Banks v. Int'l Union Electronic, Elec., Tech., Salaried,
Mach. Workers*, 390 F.3d 1049 (8th Cir. 2004)..................... 26

*Brown v. St. Louis Police Dep't.,*
691 F.2d 393 (8th Cir. 1982)............................................................. 8

*Carter v. Ark.*, 392 F.3d 965 (8th Cir. 2004) .................................... 13, 15

*Charchenko v. Stillwater*, 47 F.3d 981 (8th Cir. 1995).......................... 25

*Darr v. Carter*, 640 F.2d 163 (8th Cir. 1981) ......................................... 20

*Delta Special Sch. Dist. No. 5 v. State Bd. of Educ.,*
745 F.2d 532 (8th Cir. 1984)............................................................. 18

*Dornheim v. Sholes*, 430 F.3d 919 (8th Cir. 2005) ................................. 24

*Etheridge v. United States,*
241 F.3d 619 (8th Cir. 2001)........................................................... 4, 29

*Faibisch v. Univ. of Minnesota*, 304 F.3d 797 (8th Cir. 2002)............... 12

*Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999)........ xiii, 22

*Gardner v. First American Title Ins. Co.,*
294 F.3d 991 (8th Cir. 2003)............................................................. 8

*Hatch v. TIG Ins. Co.*, 301 F.3d 915, 916 (8th Cir. 2002) ..................... 12

*Hroch v. Omaha*, 4 F.3d 693 (8th Cir. 1993)......................................... 20

*In Re Goetzman*, 91 F.3d 1173 (8th Cir. 1996),
*cert. denied*, 519 U.S. 1042 (1996).................................................. xiii, 25

*Lemonds v. St. Louis Co.*, 222 F.3d 488 (8th Cir. 2000) ........................ 23

*Manion v. Nagin*, 394 F.3d 1062 (8th Cir. 2005) ................................... 12

*Murphy v. Ark.*, 127 F.3d 750 (8th Cir. 1997) ........................................ 29

*Missouri ex rel. Nixon v. Coeur D'Alene Tribe,*
164 F.3d 1102 (8th Cir.), *cert. denied*, 527 U.S. 1039 (1999).............. 12

*Neal v. Fields*, 429 F.3d 1165 (8th Cir. 2005) ........................................................ 16

*Porus Media Corp. v. Pall Corp.*,
186 F.3d 1077 (8th Cir. 1999).......................................................................... 12

*Parham v. Southwestern Bell Telephone Co.*,
433 F.2d 421 (8th Cir. 1970).......................................................................... 12

*Prince v. Ark. Bd. of Examiners in Psychology*,
380 F.3d 337 (8th Cir. 2007).......................................................................... 23

*Singletary v. Mo. Dept. of Corrections*,
423 F.3d 886 (8th Cir. 2005).......................................................................... 29

*Skit Int'l, Ltd. v. DAC Tech. of Ark., Inc.*,
487 F.3d 1154 (8th Cir. 2007)........................................................................ 24

*Stahl v. U.S. Dept. of Agriculture*,
327 F.3d 697 (8th Cir. 2003).......................................................................... 12

*St. Croix Waterway Ass'n v. Meyer*,
178 F.3d 515 (8th Cir. 1999)............................................................................ 8

## ARKANSAS SUPREME COURT CASES

*Ark. State Bd. of Educ. v. Purifoy*,
292 Ark. 526, 731 S.W.2d 209 (1987).............................................................. 20

*Ark. Motor Vehicle Com'n v. Cantrell Marine, Inc.*,
305 Ark. 449, 808 S.W.2d 765 (1991).............................................................. 20

*Carwell Elevator Co., Inc v. Leathers*,
352 Ark. 381, 101 S.W.3d 211 (2003).............................................................. 28

*Common Sch. Dist. No. 42 v. Stuttgart Special Sch. Dist. No. 22*,
187 Ark. 119, 58 S.W.2d 680 (1933)................................................................ 17

*Heber Springs Sch. Dist. v. West Side Sch. Dist.*,
269 Ark. 148, 599 S.W.2d 371 (1980).............................................................. 18

*Huffman v. Alderson,*
335 Ark. 411, 983 S.W.2d 899 (1998).....................................................26

*James v. Williams,*
372 Ark. 82, --- S.W.3d --- (2008)................................................2, 9, 20

*Krause v. Thompson,*
138 Ark. 571, 211 S.W. 925 (1919).............................................xiii, 17

*Lake View Sch. Dist. v. Huckabee,*
340 Ark. 481, 10 S.W.3d 892 (2000).............................................2, 27

*Lake View Sch. Dist. v. Huckabee,*
351 Ark. 31, 91 S.W.3d 472 (2002).............................................2, 9, 27

*Lake View Sch. Dist. v. Huckabee,*
355 Ark. 617, 142 S.W.3d 643 (2004)...............................................3

*Lake View Sch. Dist. v. Huckabee,*
358 Ark. 137, 189 S.W.3d 1 (2004)...................3, 14, 21, 22, 24, 25, 27

*Lake View Sch. Dist. v. Huckabee,*
362 Ark. 520, 210 S.W.3d 28 (2005).............................................5, 27

*Lake View Sch. Dist. v. Huckabee,*
368 Ark. 231, 243 S.W.3d 919 (2006)...............................................27

*Lake View Sch. Dist. v. Huckabee,*
370 Ark. 139, 257 S.W.3d 879 (2007).............................................4, 5, 27

*Mason v. State,*
361 Ark. 357, 868 S.W.2d 89 (2005)..............................................26

*Norton v. Lakeside Special Sch. Dist.,*
97 Ark. 71, 133 S.W.184 (1910)...................................................17

*Pearson v. State,*
56 Ark. 148, 19 S.W. 499 (1892)...................................................17

*Robinson v. White,*
26 Ark. 139, 1870 WL 787 (1870)..................................................10

*Saline County Bd. of Ed. v. Hot Spring Co. Bd. of Ed.*,
270 Ark. 136, 603 S.W.2d 413 (1980).................................................. 10

*Searcy v. Davenport*,
352 Ark. 307, 100 S.W.3d 711 (2003).................................................. 26

*Singletary v. Mo. Dept. of Corrections*,
423 F.3d 886, 890 (8th Cir. 2005)........................................................ 29

*Tucker v. Lake View Sch. Dist. No. 25*,
323 Ark. 693, 917 S.W.2d 530 (1996)................................................. 27

## AUTHORITY FROM OTHER JURISDICTIONS

*Friends of Eudora Public School Dist., v et al. v. Beebe*,
U.S. Dist. Ct., Eastern Dist. of Arkansas,
Pine Bluff Division, No. 5:06CV0044 SWW ....................................... 12

*Hearne v. Chicago Bd. of Educ.*,
185 F.3d 770 (7th Cir. 1999)....................................................... 11, 12

*L.A. Branch, NAACP v. L.A. Unified Sch. Dist.*,
714 F.2d 946 (9th Cir. 1983), *cert. denied*, 467 U.S. 1209 (1984)......... 29

*Moore v. Sch. Reform Bd. of Detroit*,
147 F. Supp. 679 (E.D. Mich. 2000), *aff'd*,
293 F.3d 352 (6th Cir.), *reh'g denied* (2002) ...................................... 12

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ............................ xiii, 10, 15

*Rode v. Dellarciprete*,
845 F.2d 1195 (3rd Cir. 1988) .......................................................... 29

*Warden v. Pataki*,
35 F.Supp.2d 354 (S.D.N.Y. 1999), *aff'd sub nom*,
*Chan v. Pataki*, 201 F. 3d 430 (2nd Cir. 1999)................................... 30

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
252 F.3d 316 (4th Cir. 2001), *cert denied*, 535 U.S. 904 (2002)............ 29

*Welch v. Bd. of Educ.*,
477 F. Supp. 959 (D. Md. 1979) ............................................................ 10

*Yakima Indian Nation v. Locke*,
176 F.3d 467 (9th Cir. 1999)..... ........................................................... 30

## STATUES, RULES AND REGULATIONS

U.S. Const. Amend. 14....................................................................... 19

42 U.S.C. § 1981 ................................................................................ 4

42 U.S.C. § 1982 ................................................................................ 4

42 U.S.C. § 1983 ................................................................................ 4

42 U.S.C. § 1973 ................................................................................ 4

Ark. Const. Amend. 4, § 1 ...................................................... 10, 17

Ark. Const., Art. 14 § 1 .................................................................. 14

A.C.A. § 6-11-105............................................................................ 17

A.C.A. § 6-13-634............................................................................ 10

A.C.A. § 6-13-1410.......................................................................... 20

A.C.A. § 6-13-1601.......................................................................... 13

A.C.A. § 6-13-1602............................................................................ 1

A.C.A. § 6-13-1603............................................................................ 1

A.C.A. § 25-15-212.......................................................................... 20

U. S. Supreme Court, Rule 19......................................................... 25

Federal Rule of Appellate Procedure 28 ......................................... 4

# JURISDICTIONAL STATEMENT

The district court did not have subject matter jurisdiction over the State of Arkansas or the Appellees/Defendants in their official capacity because they are immune from suit under the Eleventh Amendment of the United States Constitution. The district court also lacked subject matter jurisdiction over Appellants'/Plaintiffs' claims because of the *Rooker-Feldman* doctrine and principles of *res judicata* and collateral estoppel. Similarly, this Court does not have jurisdiction over these Appellees or Appellants' claims.

# STATEMENT OF THE ISSUES

I.  **Appellants' 14th Amendment Equal Protection Claim is Fatally Defective Because ACT 60 is Race-Neutral on its Face and Does Not Implicate Any Fundamental Right.**

*[San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973); *Hearne v. Chicago Bd. of Educ.*, 185 F.3d 770 (7th Cir. 1999); *Moore v. Sch. Reform Bd. of Detroit*, 147 F. Supp. 679 (E.D. Mich. 2000), *aff'd*, 293 F.3d 352 (6th Cir.), *reh'g denied* (2002); *Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999)]

II.  **Appellants' 14th Amendment Due Process Claim is Fatally Defective Because Appellants Have No Right to Locally Control the State Public Education System, Were Afforded Constitutional Process Where None was Due and Failed to Exhaust State Law Remedies.**

*[Krause v. Thompson*, 138 Ark. 571, 575, 211 S.W. 925, 926 (1919); *Lake View Sch. Dist. v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002); *Ark. State Bd. of Educ. v. Purifoy*, 292 Ark. 526, 731 S.W.2d 209 (1987)]

III.  **All of Appellants' Claims are Barred by *Rooker-Feldman* and *Res Judicata* Because They are Inextricably Intertwined with the Claims in *Lake View v. Huckabee*, 358 Ark. 137, 189 S.W.3d 1 (2004).**

*[Lake View Sch. Dist. v. Huckabee*, 358 Ark. 137, 189 S.W.3d 1 (2004); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1036 (8th Cir. 1999). *Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337 (8th Cir. 2007); *In Re Goetzman*, 91 F.3d 1173 (8th Cir. 1996), *cert. denied*, 519 U.S. 1042 (1996); *Mason v. State*, 361 Ark. 357, 367, 868 S.W.2d 89 (2005)]

IV.  **Appellants' Claims Against the State and its Officials are Barred by Sovereign Immunity.**

*[Kentucky v. Graham*, 473 U.S. 159 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Murphy v. Ark.*, 127 F.3d 750 (8th Cir. 1997); *Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886 (8th Cir. 2005)].

## STATEMENT OF THE FACTS

The Arkansas General Assembly passed ACT 60, along with numerous education reform measures, following the Arkansas Supreme Court's 2002 decision in *Lake View Sch. Dist. v. Huckabee,* 351 Ark. 31, 91 S.W.3d 472 (2002)("*Lake View 2002*"). *Lake View* was a long-running, state-court litigation challenging the constitutionality adequacy of Arkansas's system of funding public schools under state and federal law. *See generally, id.*

ACT 60 requires the Arkansas Department of Education ("ADE") to compile a "consolidation list" of all public school districts serving less than 350 students in each of the preceding two school years. ARK. CODE ANN. § 6-13-1602(a). These school districts can voluntarily agree to administratively consolidate with, or be annexed to, another school district (s), subject to the approval of the Arkansas State Board of Education ("ASBE"). ARK. CODE ANN. § 6-13-1603(a). School districts that do not petition the ASBE to voluntarily annex or consolidate with another school district(s), or whose petition for such a voluntary consolidation or annexation is not approved by the ASBE, "shall be administratively consolidated by the state board with or into one (1) or more school districts by June 1, to be effective the July 1 immediately following the publication" of the "consolidation list." *Id.* at (a)(3).

After the passage of ACT 60, the ADE published a list of 57 public school districts from across the State subject to administrative consolidation or annexation. **Appellees' App. 1 and Appellants' App. 435.** The Lake View school district was included in this list, but did not submit to ASBE a petition for voluntary administrative consolidation or annexation by ACT 60's April 1, 2004 deadline. **Appellees' App. 3, p. 131.**[2] Accordingly, the ASBE issued an order on May 28, 2004, which administratively consolidated Lake View with the Barton-Lexa school district, effective July 1, 2004. **Appellants' App. 3, p. 131.**

While other districts across the State were being consolidated, the FOL were challenging the laws passed by the Arkansas General Assembly in 2003, including Act 60, in *Lake View Sch. Dist. v. Huckabee,* 355 Ark. 501, 618, 139 S.W.3d 809 (2004). On January 2, 2004, the plaintiffs and intervenors in the *Lake View* lawsuit filed with the Arkansas Supreme Court a "Motion for writ of prohibition, injunctive relief, escrow of public funds, and motion for contempt."

The plaintiff class in *Lake View* included practically everyone in Arkansas, including the FOL. **Appellants' App. 6, pp. 155-162**; *Lake View Sch. Dist. v. Huckabee*, 340 Ark. 481, 486, 10 S.W.3d 892, 895 (2000)("*Lake View 2000*")(defining the plaintiff class); *see also, James v. Williams*, 372 Ark. 82, --- S.W.3d --- (2008).

---

[2] Appellants' App. 3 is Exhibit 4A to Appellants' original complaint in the record, but is omitted from Appellants' Add. 1.

After briefing and argument, the Arkansas Supreme Court entered an order on January 22, 2004, withdrawing its mandate issued in 2002. *See Lake View Sch. Dist. v. Huckabee,* 355 Ark. 617, 618, 142 S.W.3d 643, 644 (2004). On February 3, 2004, the Supreme Court appointed two former Justices as Special Masters and tasked them with reporting the actions taken by the General Assembly and the Executive Branch to comply with the Supreme Court's 2002 opinion. The question was, essentially, whether the educational reform measures passed in 2003 passed constitutional muster.

On April 2, 2004, after conducting hearings, receiving evidence and briefing from the parties (including the Appellants) the Special Masters issued their report. The Supreme Court then entertained objections to the report, permitted additional briefings, and heard oral argument on May 20, 2004. *Lake View Sch. Dist. v. Huckabee,* 358 Ark. 137, 140, 189 S.W.3d 1, 3 (2004) ("*Lake View 2004*").

On June 18, 2004, the Arkansas Supreme Court issued a supplemental opinion finding that the Acts, including ACT 60, passed by the General Assembly during the 2003 Regular and Extraordinary Sessions adequately addressed the Supreme Court's November 2002 decision. *Id.* at 161, 189 S.W.3d at 17. The Court relinquished its jurisdiction over the case and the mandate issued. No party, including the Appellants, petitioned the United States Supreme Court for a writ of certiorari.

On October 25, 2004, well after the former Lake View school district ceased to exist, FOL filed this action against the State of Arkansas.[3] **Appellants' App. 1.** The State moved to dismiss on December 15, 2004. **Appellants' App. 5-6.** FOL filed their response on March 15, 2005. **Appellants' App. 8-9.** On June 9, 2005, the Arkansas Supreme Court recalled its mandate in *Lake View* and reassumed jurisdiction. *Lake View Sch. Dist. v. Huckabee*, 362 Ark. 520, 522, 210 S.W.3d 28, 30 (2005)("*Lake View 2005*"). As a result, the district court entered an order on September 26, 2005 administratively terminating the federal action while the state court proceedings in *Lake View* resumed. **Appellants' App. 16.** FOL were afforded the opportunity to reopen the case upon its conclusion. The State of Arkansas's *Motion to Dismiss* was not addressed by the Court.

The Arkansas Supreme Court issued the final mandate in *Lake View* lawsuit on May 31, 2007, finding the education system to be constitutional. *See Lake View*

---

[3]    Appellants also alleged in their complaint that ACTS 59 and 60 violated 42 U.S.C. §§ 1981, 1982, 1983; the Voting Rights Act of 1965, 42 U.S.C. § 1973 ("VRA"); various provisions of state law; and the Fifth and Fifteenth Amendments to the United States Constitution because they will suffer an unconstitutional taking of personal, real, and tax revenues. **Appellants' App. 1, pp. 2-3, 6.** Federal Rule of Appellate Procedure 28(a) requires that Appellants' brief contain "appellant's contentions and the reasons for them." Fed. R. App. Pro. 28(a)(9). Appellants have failed to brief these claims and have abandoned them on appeal. *See Anderson v. Larson*, 327 F.3d 762, 771 (8th Cir. 2003); *Etheridge v. United States*, 241 F.3d 619, 622 (8th Cir. 2001). In the event the Court determines otherwise, the Appellees respectfully request the opportunity to file a supplemental brief on these issues.

*Sch. Dist. v. Huckabee,* 370 Ark. 139, 146, 257 S.W.3d 879 (2007)("*Lake View 2007*"). FOL petitioned to reopen the federal case on June 29, 2007, **Appellants' App. 21A**, and the State renewed its *Motion to Dismiss,* originally filed December 15, 2004. **Appellants' App. 22**.

On October 11, 2007, the district court granted FOL's motion to reopen this litigation and the State's motion to renew its prior motion to dismiss. The district court noted that pivotal to the issue of federal court jurisdiction over FOL's claims was the question whether the claims were *inextricably intertwined* with the claims FOL had already brought in the state court *Lake View* proceedings. The district court allowed supplemental briefs on this question. **Appellants' App. 23**.

On October 26, 2007, the State submitted its supplemental brief and incorporated their previous motion to dismiss and supporting brief. **Appellants' App. 24**. FOL filed their *Response* on December 7, 2007. **Appellants' App. 26**.

On April 8, 2008, the district court rejected FOL's contentions and granted the State's motion to dismiss. The district court's order referenced Judge Susan Webber Wright's order in a similar lawsuit filed by FOL's counsel as "on-point" and adopted it in full as the basis for dismissal of the FOL's complaint. **Appellants' Add. 50**. FOL filed their Notice of Appeal on May 19, 2008.

## SUMMARY OF THE ARGUMENT

FOL's 14th Amendment equal protection challenge to Act 60 was properly dismissed because the Act is race-neutral and does not implicate any federal fundamental right. ACT 60 requires the ASBE and the ADE to administratively consolidate any school district whose average daily membership is fewer than 350 students for two years. Race is never mentioned in ACT 60 and, hence, is not a factor in the consolidations. Appellants' former school district, the Lake View district, had an average daily membership below 350 for the two years preceding the passage of ACT 60. Accordingly, that district was administratively consolidated with a neighboring school district—the Barton-Lexa school district. Fifty-six (56) other school districts were administratively consolidated or annexed at the same time. A majority of the consolidated districts were predominately composed of non-African American students. FOL's race-based challenge to ACT 60 was properly rejected by the trial court, because the Act is race-neutral not only facially, but also in its application.

FOL also contend that ACT 60 should be invalidated on strict scrutiny review on the theory that ACT 60 affects education which, they allege, is a fundamental right. The United States Supreme Court has clearly held that education is not a fundamental right under federal law. Further, the Arkansas Supreme Court has never held education legislation to strict scrutiny review. FOL's claim is not that

they are deprived of an education, but that the administrative structure of the local school district has changed. FOL have no right to a particular administrative structure for the delivery of the education the students receive. Accordingly, FOL's 14th Amendment equal protection claim should remain dismissed.

FOL also attempt to mount a 14th Amendment due process claim. This likewise fails because FOL have no right to local control of the state public education system in their school district. Also, the consolidation of the Lake View school district was subject to notice and hearing safeguards in which FOL failed to engage. Thus, FOL's 14th Amendment due process claim was properly dismissed.

FOL's claims were also properly dismissed, because they are barred by the *Rooker-Feldman* doctrine and *Res Judicata*. Appellants' claims regarding ACT 60 and the education system in Arkansas are inextricably intertwined with the claims they brought in *Lake View v. Huckabee*, 358 Ark. 137, 189 S.W.3d 1 (2004). Since FOL could have, and indeed did, raise in the *Lake View* state court litigation the very claims they raise here, their duplicative federal case was correctly dismissed. The *Lake View* case became final when judgment was entered on May 31, 2007. The *Rooker-Feldman* doctrine bars Appellants' attempt to undo the Arkansas Supreme Court's rulings through collateral federal litigation.

Finally, the claims against the State of Arkansas and its Officials are barred by sovereign immunity.

## ARGUMENT

The standard of review from an order granting a motion to dismiss is *de novo*. *Gardner v. First American Title Ins. Co.*, 294 F.3d 991 (8th Cir. 2003). This Court may affirm the trial court's order on any ground, even those that may not appear in the record below. *Brown v. St. Louis Police Dep't.*, 691 F.2d 393 (8th Cir. 1982).

## I. APPELLANTS' 14TH AMENDMENT EQUAL PROTECTION CLAIM IS FATALLY DEFECTIVE BECAUSE ACT 60 IS RACE-NEUTRAL ON ITS FACE AND DOES NOT IMPLICATE ANY FUNDAMENTAL RIGHT.

FOL argues that ACT 60, "on its face", violates their right to equal protection under the 14th Amendment. **Appellants' App. 1, p. 2 and App. 2, p. 97.** "Unless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Public Sch*, 487 U.S. 450, 457 (1988). A facial constitutional challenge to a state statute involves questions of law which can be resolved on a motion to dismiss. *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 521 (8th Cir. 1999). ACT 60 is racially neutral and applies to all school districts with enrollments below 350 regardless of racial composition. ARK. CODE ANN. § 6-13-1602.

FOL contends that ACT 60 should be subject to strict scrutiny review because (a) it involves public education and; (b) it led to the dissolution of the Lake View school district which was predominately African-American.

In regard to FOL's first argument, there is no federal constitutional right to a public education. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-37 (1973); *James v. Williams*, 372 Ark. 82, ---S.W.3d----, 2008 WL 95777 (Ark. Jan 10, 2008) (No. 07-619). Appellants' argument that public education is an "absolute right" under the Arkansas Constitution or that strict scrutiny is warranted under state law is irrelevant to their 14th Amendment claim. Additionally, the contention itself is without merit because the Arkansas Supreme Court has repeatedly refused to apply strict scrutiny to public education matters as a matter of Arkansas law. *Dupree v. Alma Sch. Dist.*, 279 Ark, 340, 651 S.W.2d 90 (1983); *Magnolia Sch. Dist., v. Ark. State Bd. of Educ.*, 303 Ark. 666, 669, 799 S.W.2d 791, 793, (1990); *Lake View 2002*, 351 Ark. 31, 91 S.W.3d 472.

In any event, FOL's underlying complaint does not allege that children of the former Lake View school district are now being denied an adequate public education—Appellants simply oppose the reorganization of their school district and the shared local control that followed. **Appellants' Brief, p. 11.** This does not trigger strict scrutiny. Assuming the FOL have a state law fundamental right to a publicly funded education, they do not have a fundamental right to control the

State's public education system in their district. *See Rodriguez*, 411 U.S. 1, 33 (a fundamental right must be "explicitly or implicitly guaranteed by the [United States] Constitution"). The control of the public school system is a State matter delegated and lodged in the State Legislature by the Arkansas Constitution. *See* ARK. CONST. AMEND. 4, § 1. *See also Lake View 2002, supra; Saline Co. Bd. of Ed. v. Hot Spring Co. Bd. of Edu.*, 270 Ark. 136, 603 S.W.2d 413 (1980). "Save and unless the state...runs afoul of a federally protected right, it has vast leeway in the management of its internal affairs." *Sailors v. Kent Bd. of Edu.*, 387 U.S. 105, 109 (1967).

Similarly, FOL have no fundamental right to vote for members of a school board. *Mixon v. Ohio*, 193 F.3d 389, 403 (6th Cir. 1999). *See also, Sailors*, 387 U.S. at 108; *Welch v. Bd. of Educ.*, 477 F. Supp. 959, 964 (D. Md. 1979). *Accord, African-American Voting Rights Legal Defense Fund, Inc. v. State of Mo.*, 944 F.3d 1105, 1127, *aff'd*, 133 F.3d 921 (8th Cir. 1998).

They have no fundamental right to retain an elected official on their school board. *See Robinson v. White*, 26 Ark. 139, 141, 1870 WL 787, *1 (1870) ("The Legislature has absolute control over all statutory offices, and may abolish them at pleasure; and in doing so no vested right is being invaded."). The school board offices were created by statute. *See* ARK. CODE ANN. § 6-13-634. Thus, the Arkansas Legislature had the authority to modify their authority, vest in the ASBE

the power to suspend it, or even abolish the board altogether. Undoubtedly, the FOL have no right to a particular administration or regulation of their public school district, therefore, any challenge to such laws is subject to rational basis review.

Turning next to FOL's racial discrimination claim, ACT 60 does not contain any racial classification. Where facially neutral legislation is challenged on the grounds that it discriminates on the basis of race, the enactment will be required to withstand strict scrutiny <u>only</u> if the Appellants can prove that it "was motivated by a racial purpose or object," or "is unexplainable on grounds other than race." *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999); *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 481 (1997). Proving that a law has a racially disparate impact, without more, is insufficient to establish a violation of the 14th Amendment. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977).

In *Hearne v. Chicago Bd. of Educ.*, the Seventh Circuit rejected an equal protection challenge to a school reform in Chicago that was similar to the disparate treatment allegation made by the FOL in the present lawsuit. 185 F.3d 770 (7th Cir. 1999). In *Hearne*, the school district employees challenged legislation as restricting their bargaining rights, claiming that the legislation had a racially disparate impact. The court dismissed their equal protection claim, noting that there are substantial numbers of African-Americans in many other Illinois cities and "it is simply too great a stretch to say that the population represented by the

11

Chicago school system is such a good proxy for African-Americans that the ostensibly neutral classification is 'an obvious pretext for discrimination.' " 185 F.3d at 775-76. *See also, Moore v. Sch. Reform Bd. of Detroit*, 147 F. Supp. 679, 694 (E.D. Mich. 2000), *aff'd*, 293 F.3d 352 (6th Cir.), *reh'g denied* (2002).

It is, likewise, too great a stretch to say that any school district in Arkansas that falls below 350 students is "such a good proxy for African-Americans" that the neutral classification in ACT 60 is "an obvious pretext for discrimination." In fact, the overwhelming majority of the school districts affected by ACT 60 had student populations that were all-white or nearly so. **Appellees' App. 19-66.**[4] ACT 60 is racially neutral on its face and applies to any school district with enrollment below 350, whatever the racial or ethnic composition of the students,

---

[4]     The ADE's 2005-06 enrollment data reflecting the racial composition of the school districts annexed or consolidated pursuant to ACT 60 were attached to *State Defendants' Motion to Dismiss* as Exhibits C and D in *Friends of Eudora Public School Dist., v et al. v. Beebe*, 2008 WL 828360, E.D. Ark., March 25, 2008 (NO. 5:06CV0044 SWW). The final order in that case was adopted "in full" by the trial court's order in this matter. **Appellants' Add. p. 50.**

The attached exhibits are public records for which the Court may take judicial notice. *See Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.), *cert. denied*, 527 U.S. 1039 (1999); *Manion v. Nagin*, 394 F.3d 1062, 1065 (8th Cir. 2005)(arbitration judgment); *Faibisch v. Univ. of Minnesota*, 304 F.3d 797 (8th Cir. 2002)(EEOC charge); *Hatch v. TIG Ins. Co.*, 301 F.3d 915, 916 (8th Cir. 2002)(documents from underlying state court case); *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (petition for injunction); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 430 n. 4 (8th Cir. 1970)(taking judicial notice on appeal of Arkansas census data); *Porus Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999)(proceedings in prior litigation).

Board members, administrators, or registered voters in that district. *See* ARK. CODE ANN. § 6-13-1601 *et seq.* FOL never controverted this fact below and have cited no factual basis in their brief for the allegation of racial bias or motive.

Classifications that do not involve a fundamental right or a suspect class are subject to a rational basis test. *Carter v. Ark.*, 392 F.3d 965, 968 (8th Cir. 2004). Under that test, it is permissible to treat classes, such as school districts, differently if the legislation is rationally related to a legitimate state purpose. *Id.* Because FOL alleged no facts to support the conclusory allegation of purposeful discrimination and their claims do not otherwise involve a fundamental right protected by the United States Constitution, their federal equal protection claims are subject to rational basis review.

Under this review, a court must reject any equal protection challenge to a statutory classification "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Carter*, 392 F.3d at 968 (*quoting FCC v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993)). "A legislative choice...may be based on rational speculation unsupported by evidence or empirical data." *Id.* (*quoting Beach,* 508 U.S. at 315). In other words, "it is not necessary to wait for further factual development." *Id.* (*quoting Beach,* 508 U.S. at 313). Therefore, it was appropriate for the district court to conduct a rational basis analysis on a motion to dismiss, *see id,* and the State of Arkansas did not have to

produce evidence to support the challenged legislation because it is presumed to be supported based on any available "rational speculation." *Beach*, 508 U.S. at 315.

That said, there is a rational, and likely a compelling, basis for ACT 60. ACT 60 was enacted to "ensure the delivery of an equal opportunity for an adequate education to the people of Arkansas in an efficient and effective manner." *See* ACT 60 § 1 OF 2003 (Second Extra. Sess.). **Appellees' Add. 1.** It is a legitimate governmental purpose to see that public funds committed to public schools are spent in an "efficient" manner. In fact, it is mandated by the Arkansas Constitution. ARK. CONST., Art. 14 § 1 ("the State shall ever maintain a general, suitable and *efficient* system of free public schools...")(emphasis added).

Additionally, it is rational to conclude that school districts (each of which has its own school superintendent, central office staff, school board, and maintenance and operational costs) serving less than 350 children can more efficiently spend scarce public funds if those districts are consolidated into larger administrative units. The Special Masters in *Lake View 2004* suggested that a greater variety of curricular offering to high-school students across the State could not be accomplished without consolidation provided by measures like ACT 60, as it would not be economically feasible to do so in a small school district. *Lake View 2004*, 358 Ark. at 156, 189 S.W.3d at 14.

The United States Supreme Court has held, "[t]he very complexity of the problems of financing and managing a statewide public school system suggests that 'there will be more than one constitutionally permissible method of solving them,' and that, within the limits of rationality, 'the legislature's efforts to tackle the problems should be entitled to respect.'" *Rodriguez*, 411 U.S. at 42 (*citing Jefferson v. Hackney*, 406 U.S. 535, 546-47 (1972)).

In *Mixon, supra,* the Sixth Circuit applied the rational basis test and upheld school district legislation which allowed Cleveland's mayor to appoint a new school board. 193 F.3d at 403. The Court held that "state legislatures need the freedom to experiment with different techniques to advance public education and this need to experiment alone satisfies the rational basis test." *Id.* The Court in *Moore, supra,* likewise held that the need of the Michigan Legislature to experiment with different techniques to advance public education alone satisfies the rational basis test. 147 F.Supp.2d at 696.

Since FOL do not assert a fundamental right and the challenged laws are racially-neutral on their face, the rational basis standard applies. Under this analysis, the law itself supplied the basis for dismissal of FOL's complaint. Even if it did not, the district court was still correct to dismiss this lawsuit because, as a matter of law, ACT 60 is presumed to be supported on "rational speculation." *Beach,* 508 U.S. at 315; *Carter*, 392 F.3d at 968. FOL failed to allege any set of

facts, beyond conclusory allegations, that would have overcome this presumption. Therefore, the trial court's order to dismiss FOL's equal protection claim should be upheld.

## II. APPELLANTS' 14TH AMENDMENT DUE PROCESS CLAIM IS FATTALY DEFECTIVE BECAUSE APPELLANTS HAVE NO RIGHT TO LOCALLY CONTROL THE STATE PUBLIC EDUCATION SYSTEM IN THEIR SCHOOL DISTRICT AND FAILED TO EXHAUST STATE LAW REMEDIES.

FOL's brief makes the bare allegation that their federal due process rights were violated, but they do not elaborate on this point in their brief. **Appellants' Brief, p. 1.** The 14th Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." The procedural component of the due process clause protects property interests created not by the Constitution but by "rules or understandings that stem from an independent source such as state law." *Neal v. Fields*, 429 F.3d 1165, 1167 (8th Cir. 2005)(*quoting Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)).

As previously stated, FOL have no liberty or property interest that entitles them to control the manner of delivering the State's public education system in their district. The control of the public school system is a State matter—delegated and lodged in the State Legislature by the Arkansas Constitution. *See* ARK. CONST. *Amend.* 4, § 1. *See also Lake View 2002, supra; Saline Co. Bd. of Ed.*, 270 Ark. 136, 603 S.W.2d 413. "The Legislature is primarily vested with the power to

create school districts, and it may create or abolish a school district, or change the boundaries of those established for any reason that may be satisfactory to it. The Legislature may do this without consulting and without obtaining the assent of those persons who reside in the territory affected." *Norton v. Lakeside Special Sch. Dist.*, 97 Ark. 71, 133 S.W.184 (1910). The Arkansas Supreme Court has declared that "the legislative control over the organization of school districts and changes therein is supreme," *see Krause v. Thompson*, 138 Ark. 571, 575, 211 S.W. 925, 926 (1919), and that they "may delegate this authority to any inferior department of the government...." *Common Sch. Dist. No. 42 v. Stuttgart Special Sch. Dist. No. 22*, 187 Ark. 119, 58 S.W.2d 680, 682 (1933). The Arkansas Legislature has vested general supervision over all State public schools in the ASBE. ARK. CODE ANN. § 6-11-105 (a)(1).

Unlike the delegation of other powers by the legislature to local governments, education is not inherently a part of the local self-government of a municipality except insofar as the legislature may choose to make it such. School districts do not exist except as provided by the State; they have no functions, rights, or powers except as provided by state law. *See Pearson v. State*, 56 Ark. 148, 19 S.W. 499 (1892). The United States Supreme Court has stated:

> Political subdivisions of State-counties, cities or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental

17

> instrumentalities created by the State to assist in the carrying out of
> state governmental function.
>
> ***
>
> [T]hese governmental units are created as convenient agencies for
> exercising such of the governmental powers of the state, as may be
> entrusted to them, and the number, nature and duration of the powers
> conferred upon (them)...and the territory over which they shall be
> exercised rests in the absolute discretion of the state.

*Sailors*, 387 U.S. at 107(citations omitted). The law is clear—FOL have no right

to own, control, maintain or otherwise perpetuate the existence of the Lake View

school district as against the State and have no federal right to any hearing upon its

consolidation, annexation or termination.

FOL are attempting to assert "derivative" due process claims on behalf of

the Lake View school district, as if to "stand in the shoes" of the district and assert

its alleged "rights." However, it is black-letter law that school districts, as political

subdivisions of the State, cannot invoke the protection of the 14th Amendment as

against the State itself. *See* U.S. CONST. AMEND. 14. ("No State shall make or

enforce any law which shall abridge the privileges or immunities of *citizens* of the

United States; nor shall any State deprive any *person* of life, liberty, or property,

without due process of law."). *See Delta Special Sch. Dist. v. State Bd. of Educ.*,

745 F.2d 532 (8th Cir. 1984) (School districts are political subdivisions of the State

and cannot invoke the protection of the 14th Amendment against the State itself).

*See also, Heber Springs Sch. Dist. v. West Side Sch. Dist.*, 269 Ark. 148, 153, 599

S.W.2d 371, 374 (1980) ("school districts are generally considered creatures of the

18

state and may not avail themselves of all constitutional safeguards."). Here, because the Lake View school district enjoyed no protection under the Fourteenth Amendment as against the State, FOL, to the extent they seek to invoke the "rights" of the Lake View school district, failed to state a claim upon which relief could have been granted by the district court.

Moreover, it was proper for the district court to dismiss FOL's complaint because the procedural component of the due process clause requires only that a party be given notice and an opportunity for a hearing at a meaningful time and in a meaningful manner. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The ASBE has promulgated rules which provides advanced notice of administrative consolidation proceedings. **Appellees' Add. 9-12.**[5] It also allows any school district or group of citizens which opposes a petition, like FOL, the opportunity to present their opposition to the ASBE. **Appellees' Add. 9-12.** The allegations and exhibits referenced in FOL's complaint establish that constitutional process was afforded where none was due. **Appellants' App. p. 27, ¶ 92 and 3, p. 131.**[6]

Additionally, the Lake View school district had the opportunity to voluntarily select a consolidation partner by ACT 60'S April 1, 2004 deadline, but it failed to comply. **Appellants' App. 3, p. 131.** The ASBE made the final decision

---

[5]     *See* footnote 4 regarding judicial notice.

[6]     Appellants' App. 3 is Exhibit 4A to Appellants' original complaint in the record, but is omitted from Appellants' Add. 1.

to consolidate the district. **Appellants' App. 3.** The ASBE is an administrative agency, and any judicial review of that decision is governed by the *Arkansas Administrative Procedure Act*, ARK. CODE ANN. § 6-13-1410. *See Ark. State Bd. of Educ. v. Purifoy*, 292 Ark. 526, 731 S.W.2d 209 (1987). FOL had thirty days from the date the decision of the Board was served to file a petition in circuit court seeking judicial review of the decision. ARK. CODE ANN. § 25-15-212(b)(1). This appeal process provided an adequate state law remedy. *See also, Hudson v. Palmer,* 468 U.S. 517 (1984) and *Parratt v. Taylor,* 451 U.S. 527 (1981), *overruled in part on other grounds by, Daniels v. Williams*, 474 U.S. 327 (1986). *See also, James*, 372 Ark. 82, ---S.W.3d--- (concurrence). However, there is no allegation, nor could there be, that the Lake View school district, its board, or any of the Appellants, appealed the ASBE's decision under this statute or were otherwise denied the right to do so. Therefore, any due process claim challenging the classification of the Lake View school district or its subsequent consolidation has been waived. *See Hroch v. Omaha*, 4 F.3d 693, 695-96 (8th Cir. 1993).

It is a basic tenet of administrative law that parties are required to exhaust their administrative remedies prior to resorting to court action. Resort to the courts is simply not appropriate until the administrative process is complete. *Darr v. Carter,* 640 F.2d 163 (8th Cir. 1981); *Ark. Motor Vehicle Com'n v. Cantrell Marine, Inc.*, 305 Ark. 449, 808 S.W.2d 765 (1991). No one is entitled to judicial

relief "for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Meyers v. Bethlehem Ship Bldg. Corp.*, 303 U.S. 41, 51 (1938). Because FOL did not exhaust the process that state law allowed, much less allege such exhaustion, the district court correctly determined that their claims were barred.

### III. ALL OF APPELLANTS' CLAIMS ARE BARRED BY *ROOKER-FELDMAN* AND *RES JUDICATA* BECAUSE THEY ARE INEXTRICABLY INTERTWINED WITH THE CLAIMS IN *LAKE VIEW V. HUCKABEE*, 358 ARK. 137, 189 S.W.3d 1 (2004)

The district court properly determined that FOL's claims are barred by the *Rooker-Feldman* doctrine as well as principles of *res judicata* and collateral estoppel because the Appellants' already litigated their claims in state court. FOL concede in their complaint and throughout their brief that they were plaintiffs in the long-running state-court litigation challenging the constitutionality of Arkansas's public school system, known as *Lake View*. **Appellants' App. 1-2.**

In response to the Arkansas Supreme Court's decision in *Lake View 2002*, the Arkansas General Assembly enacted ACT 60 and numerous other education reform measures. FOL were among others who were party to the state-court litigation culminating in the Arkansas Supreme Court's appointment of Special Masters and issuance of its June 18, 2004 decision to relinquish jurisdiction over the case. *See Lake View 2004*, 358 Ark. 137, 189 S.W.3d 1.

It is plain from the Arkansas Supreme Court's decision that all of the legislative acts passed after the Supreme Court's 2002 opinion, including ACT 60, were open for scrutiny and challenge by any party. It is also clear that FOL, as part of the plaintiff class in *Lake View*, had a full and fair opportunity to, and in fact did, attack the validity of ACT 60 before the Special Masters and, again before the Supreme Court. **Appellants' App. 24, pp. 325-30.**[7] The Arkansas Supreme Court, however, did not grant the class any relief with regard to that Act, and dismissed the case, allowing the mandate to issue. *Lake View 2004*, 358 Ark. 137, 189 S.W.3d 1.

Claims either decided by a state court or that are inextricably intertwined with a state-court decision are barred under *Rooker-Feldman*. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983). A claim is inextricably intertwined if its success depends on a finding that the state court was wrong or would effectively reverse or void the state court's ruling. *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1036 (8th Cir. 1999). The doctrine bars both straight forward and indirect attempts to "undermine state court decisions." *Prince v. Ark. Bd. of Examiners in Psychology*, 380 F.3d 337 (8th Cir. 2007)(*quoting Lemonds v. St. Louis Co.,* 222 F.3d 488, 492 (8th Cir. 2000)).

---

[7]    Plaintiffs' *Objection to Masters' Report, Recommendations, Motion for Sanctions, Attorneys Fees and Costs* filed in *Lake View* II on April 22, 2004, attached to *State Defendants' Supplemental Motion to Dismiss* as Exhibit B

FOL's present claims are *inextricably intertwined* with those brought before the Arkansas Supreme Court in *Lake View* because their success in this lawsuit would void the determination by Arkansas's highest court that its public education system is constitutional. In 2004, the Appellants specifically objected to the Special Masters' report on the basis that it failed to conclude that ACT 60 "violates equal protection because it fails to provide for the orderly transfer or retention of personnel." **Appellants' App. 24, pp. 325-26.** The Appellants further requested that the Arkansas Legislature should be "ordered to reconvene in special session within 45 days and repeal ACT 60 as unconstitutional and a violation of equal protection and voting rights." **Appellants' App. 24, pp. 326.**

FOL's claims attacking the constitutionality of ACT 60 and the consolidation of the Lake View school district were raised, briefed, and rejected by the Court in its June 18, 2004 decision. *See Lake View 2004*, 358 Ark. at 140, 156-58, 189 S.W.3d at 3, 14-15. The Arkansas Supreme Court concluded that the Acts passed by the General Assembly in 2003, including ACT 60, adequately addressed the Arkansas Supreme Court's November, 2002, decision with respect to the constitutionality of the State's public education system. *Id.* The Arkansas Supreme Court's determination that the State's public education system was constitutional was premised upon the conclusion that ACT 60's administrative consolidation was not only lawful, but necessary for the State to meet its

constitutional obligations with regard to the State's public education system. *Id.* at 151-60.

The viability of ACT 60 was part of the foundation of the Arkansas Supreme Court's determination that the State complied with its obligation to provide Arkansas's children with an adequate and substantially equal education. *See id.* The FOL's claims in the present matter, if successful, would render the State's public education system unconstitutional and demand additional legislative action and relitigation to repair the funding deficiencies created by a judgment in the FOL's favor. Therefore, the *Rooker-Feldman* doctrine precludes the FOL from recasting their claims in federal court in an attempt to overturn the Arkansas Supreme Courts' decision in *Lake View*.

*Exxon Mobile* makes clear that the *Rooker/Feldman* doctrine precludes federal district court jurisdiction if the federal suit is commenced after the state court proceedings, *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005). *See also, Skit Int'l, Ltd. v. DAC Tech. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007); *Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005). Under *Exxon Mobile,* dismissal of the FOL's complaint in the present matter was correct.

For the purpose of this analysis, it is irrelevant whether or not the Supreme Court's decision on these issues was final before the entire *Lake View* litigation was finally resolved in 2007 because *Rooker-Feldman* does not require a "final"

state-court judgment on the merits to preclude jurisdiction. *Rooker-Feldman* is broader than claim and issue preclusion in this regard. *See Charchenko v. Stillwater*, 47 F.3d 981, 983 n. 1 (8th Cir. 1995). The *Rooker-Feldman* doctrine applies to attempted appeals of both "final" state court orders and state court orders that are "interlocutory" or otherwise not "final." *See In Re Goetzman*, 91 F.3d 1173 (8th Cir. 1996), *cert. denied*, 519 U.S. 1042 (1996). "Application of the *Rooker-Feldman* doctrine does not depend on a final judgment on the merits of an issue . . . nor is there a procedural due process exception to the doctrine." *Id.*

In *Goetzman*, the Court held, "If the state trial court erred in the extent it addressed the issue the [Appellants] are now pressing, relief was available in the appellate courts of [the state]. None being forthcoming, the plaintiffs cannot now bring an action in federal court which would effectively reverse the state court decision or void its ruling." *Goetzman*, 91 F.3d at 1178 (internal citations omitted)). Similarly, in the present matter, if the Arkansas Supreme Court truly erred with regard to FOL's constitutional claims, further relief was available through *certiorari* review to the United States Supreme Court. *See Rule 19 of the Rules of the Supreme Court of the United States*; *Feldman*, 460 U.S. at 486. FOL never applied for *certiorari* review of any of the Arkansas Supreme Court's decisions and cannot now bring an action in federal court which would effectively reverse the State court's decisions or void its rulings.

FOL's claims are also barred by the doctrine of *res judicata*. The doctrine encompasses the distinct concepts of issue and claim preclusion. Issue preclusion provides that "a decision by a court of competent jurisdiction on matters which were at issue, and which were directly and necessarily adjudicated, bars any further litigation on those issues by the plaintiff or his privies against the defendant or his privies on the same issue." *Mason v. State*, 361 Ark. 357, 367, 868 S.W.2d 89 (2005). Claim preclusion provides that "a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim." *Id. (citing Searcy v. Davenport*, 352 Ark. 307, 100 S.W.3d 711 (2003)).

*Res judicata* bars not only the relitigation of issues that were actually decided in the first suit, but also those which could have been litigated but were not. *Searcy*, 352 Ark. at 310, 100 S.W.2d 3d at 713. Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Huffman v. Alderson*, 335 Ark. 411, 415, 983 S.W.2d 899, 901 (1998). *See also, Banks v. Int'l Union Electronic, Elec., Tech., Salaried, Mach. Workers*, 390 F.3d 1049 (8th Cir. 2004).

These common law doctrines exist to promote the finality of judgments and to prevent the relitigation of issues already decided. *Id; see also Brown v. Felsen,*

442 U.S. 127, 131 (1979). As such, they are rules of "fundamental and substantial justice," because by permitting contested matters to achieve a state of repose, *res judicata* encourages reliance on adjudication, bars vexatious litigation, and promotes economy of judicial resources. *Hart Steel Co. v. R.R. Supply Co.,* 244 U.S. 294, 299, (1917); *Allen v. McCurry,* 449 U.S. 90 (1980); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979). Both issue and claim preclusion apply to this case.

At the repeated urging of the plaintiff school districts and under the direction of the State's highest court, almost every aspect of the State's public education system was comprehensively litigated by the parties and intensely scrutinized by the Special Masters. *See Lake View 2007, 2006, 2005, 2004, 2002, and 2000, supra; Tucker,* 323 Ark. 693, 917 S.W.2d 530. The Arkansas Supreme Court freely recalled its mandate to address any and all concerns raised by the Appellants regarding the constitutionality of the State's education system and repeatedly authorized the Special Masters, two former Arkansas Supreme Court Justices, to examine and evaluate "any other issue they deem relevant to constitutional compliance." *Lake View Sch. Dist. v. Huckabee,* 368 Ark. 231, 234, 243 S.W.3d 919, 921 (2006); *Lake View Sch. Dist. v. Huckabee,* 362 Ark. 520, 523, 210 S.W.3d 28, 30 (2005).

Regardless of how broadly FOL's 14th Amendment challenge to ACT 60 is construed in the present lawsuit, and regardless of whether those claims were specifically litigated during the *Lake View* proceedings, they could have and properly should have been raised in that matter. The Arkansas Supreme Court, with the assistance of the Special Masters, were fully knowledgeable of all circumstances and uniquely disposed to address all aspects of the State's education system and fully adjudicate the claims raised by FOL in this lawsuit during that proceeding. FOL, as part of the class action which filed the *Lake View* lawsuit, cannot now deny that they had a full and fair opportunity to raise their present claims. These same parties, with the same attorney, litigated these same issues in the *Lake View* proceedings in state-court. FOL participated and their counsel argued the same claims they raise before this Court. If this suit is not barred "then one citizen after another might institute a suit for himself and others against the [State], and if the judgment in one suit was not a bar, this could continue until every citizen in the state had brought suit." *Carwell Elevator Co., Inc v. Leathers*, 352 Ark. 381, 389, 101 S.W.3d 211 (2003). The district court was correct to dismiss the FOL's complaint based on *res judicata* because these Appellants, as part of the plaintiff class in *Lake View*, have already unsuccessfully litigated these issues in state court. Therefore, the district court's decision to dismiss this case should be affirmed.

## IV. APPELLANTS' CLAIMS AGAINST THE STATE OF ARKANSAS AND ITS OFFICIALS ARE BARRED BY SOVEREIGN IMMUNITY

FOL alleged numerous other causes of action in their complaint, but did not address them in their brief and have subsequently abandoned them on appeal. *Anderson*, 327 F.3d at 771; *Etheridge*, 241 F.3d at 622 ("Claims not argued in the briefs are deemed abandoned on appeal."). Even if they were not abandoned, they are barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Murphy v. Ark.*, 127 F.3d 750 (8th Cir. 1997); and *Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005).[8]

All of FOL's claims against the Governor are barred by sovereign immunity because they do not fall within the *Ex parte Young* exception. *See Ex parte Young*, 209 U.S. 123, 155-57 (1908). *See also, See, e.g., Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330-31 (4th Cir. 2001), *cert denied*, 535 U.S. 904 (2002); *Yakima Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999); *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3rd Cir. 1988); *L.A. Branch, NAACP v. L.A. Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983), *cert. denied*, 467 U.S. 1209

---

[8] The reasoning of *Singletary* applies with equal force to § 1982 claims. Sections 1981 and 1982 derive their operative language from the first section of the Civil Rights Act of 1866 and are generally construed in tandem because of their common origin and purpose. *See Tillman v. Wheaton-Haven Rec. Ass'n, Inc.*, 410 U.S. 431, 440 (1973).

(1984). Additionally, using the Governor's role in approving legislation as the basis for FOL's claims is barred by the doctrine of absolute legislative immunity. *See, e.g., Warden v. Pataki*, 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999), *aff'd sub nom, Chan v. Pataki*, 201 F. 3d 430 (2nd Cir. 1999).

## CONCLUSION

Based on the foregoing facts, reasons, and authorities, the Appellees pray that the district court's April 8, 2008 order dismissing Appellants' complaint be affirmed in all respects.

Respectfully submitted,
DUSTIN McDANIEL,
ATTORNEY GENERAL


By: *[signature]*
MATTHEW B. McCOY,
Arkansas Bar No. 2001165
Assistant Attorney General
323 Center Street
1100 Catlett-Prien Tower Building
Little Rock, AR  72201-2610
Telephone: (501) 682-1319
ATTORNEYS FOR
DEFENDANTS/APPELLEES

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies that this brief complies with the length requirements as set forth in Fed. R. App. P. 32(a)(7). It contains 8,047 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared with Microsoft Office Word 2003 and typed in proportionally spaced Times New Roman 14-point font.

This brief has been saved on the enclosed compact disk. Undersigned counsel certifies that this disk has been scanned for viruses and is virus free.

MATTHEW McCOY

## CERTIFICATE OF SERVICE

I, Matthew McCoy, Assistant Attorney General, do hereby certify that I have

served the foregoing document by mailing a copy of same by U.S. mail, postage

prepaid, this 4th day of November, 2008, to the following persons:


Jimmie L. Wilson
Attorney at Law
521-523 Plaza Street
West Helena, AR 72390
attorneyjlwilson@suddenlinkmail.com

MATTHEW McCOY

# ADDENDUM

Act 60 of 2003 § 3 (Second Extra. Sess.),
codified as ARK. CODE ANN. § 6-13-1601, *et seq*...........................................ADD. 1

Arkansas Department of Education Rules Governing
Administrative Consolidation or Annexation of Public
School Districts and Boards of Directors of Local School
Districts ............................................................................................ADD. 9

Stricken language would be deleted from and underlined language would be added to present law.

Act 60 of the 2nd Extraordinary Session

1　State of Arkansas
2　84th General Assembly
3　Second Extraordinary Session, 2003

*As Engrossed: S1/20/04*

# A Bill

Call Item 4

HOUSE BILL　1109

5　By: Representatives Bond, Ledbetter, Walters, Thyer, Bradford, *Clemons, Sullivan*

## For An Act To Be Entitled

AN ACT TO ADMINISTRATIVELY REORGANIZE THE EXISTING PUBLIC EDUCATION SYSTEM; AND FOR OTHER PURPOSES.

## Subtitle

THE PUBLIC EDUCATION REORGANIZATION ACT.

WHEREAS, The Arkansas Supreme Court, in the decision of Lake View School District No. 25 v. Huckabee, 351 Ark. 31 (2002) declared the now extant system of funding public education to be unconstitutional because it is both inequitable and inadequate; and

WHEREAS, The Arkansas Supreme Court set forth the test for a constitutional system to be one in which the state has an "absolute duty" to provide an "equal opportunity to an adequate education",

NOW THEREFORE,
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:

SECTION 1.　Legislative purpose.
The General Assembly declares that this act is necessary to ensure the delivery of an equal opportunity for an adequate education to the people of Arkansas in an efficient and effective manner.

SECTION 2.　Arkansas Code § 6-13-1405(a)(5), concerning procedures for consolidation, is amended to read as follows:
　　　(5)(A)(i)　The state board shall afford the local school



ADD. 1

1  districts in a consolidation thirty (30) days to establish an interim local
2  board to govern the resulting district pursuant to § 6-14-1406 until the next
3  school election.
4
5       (ii)  If the consolidation is under § 6-13-1602, the
6  resulting school districts shall establish an interim board by May 31
7  immediately preceding the effective date of consolidation.
8       (B)  If the local school districts fail to establish an
9  interim board, the state board shall appoint an interim local board to serve
10 until the next elected board assumes office. The number of interim board
11 positions shall be set as allowed by law.
12      (C)(i)  The interim board shall be made up of board members
13 from the boards of directors of the affected school districts.
14      (ii)  The proportion of board members from each of
15 the affected school districts shall be equal to the proportion of the student
16 population in the resulting school district that came from each affected
17 school district.
18
19 SECTION 3.  Arkansas Code Title 6, Chapter 13, is amended to add an
20 additional subchapter to read as follows:
21      6-13-1601.  Definitions.
22      As used in this subchapter:
23      (1)  "Administrative annexation" means the joining of an affected
24 school district or a part of the school district with a receiving district;
25      (2)  "Administrative consolidation" means the joining of two (2)
26 or more school districts to create a new single school district with one (1)
27 administrative unit and one (1) board of directors that is not required to
28 close school facilities.
29      (3)  "Affected district" means a school district that loses
30 territory or students as a result of administrative annexation or
31 consolidation;
32      (4)(A)  "Average daily membership" means the total number of days
33 attended plus the total number of days absent by students in grades
34 kindergarten through twelve (K-12) during the first three (3) quarters of
   each school year divided by the number of school days actually taught in the
   district during that period of time rounded up to the nearest hundredth.
        (B)  Students who may be counted for average daily

1  membership are:

2

3      (i)  Students who reside within the boundaries of the
4  school district and who are enrolled in a public school operated by the
5  district or a private school for special education students, with their
6  attendance resulting from a written tuition agreement approved by the
7  Department of Education;

8      (ii)  Legally transferred students living outside the
9  district but attending a public school in the district; and

10      (iii)  Students who reside within the boundaries of
11  the school district and who are enrolled in the Arkansas National Guard Youth
12  Challenge Program, so long as the students are participants in the program;

13  (5)  "Consolidated average daily membership" means the sum of the
14  average daily membership for each school district included in a consolidation
15  if the average daily membership for the school district was five hundred
16  (500) or fewer for the school year immediately preceding the school year for
17  which the consolidation becomes effective;

18  (6)  "Consolidated national school lunch student total" means the
19  sum of national school lunch students in each school district included in a
20  consolidation if the average daily membership for the school district was
21  five hundred (500) or fewer for the school year immediately preceding the
22  school year for which the consolidation becomes effective;

23  (7)  "National school lunch students" means those students from
24  low socio-economic backgrounds as indicated by the eligibility for free or
25  reduced-priced meals under the National School Lunch Act as calculated on
26  October 1 of each year and submitted to the Department of Education.

27  (8)  "Receiving district" means a school district or districts
28  that receive territory or students, or both, from an affected district as a
29  result of administrative annexation; and

30  (9)  "Resulting district" means the new school district created
31  from an affected district or districts as a result of administrative
32  consolidation;

33  6-13-1602.  Administrative consolidation list.
34  (a)  By February 1, 2004, and each February 1 thereafter, the
35  Department of Education shall publish a consolidation list that includes all
36  school districts with fewer than three hundred fifty (350) students according

ADD. 3

1  to the district's average daily membership in each of the two (2) school
2  years immediately preceding the current school year.
3      (b)  If the effective date of this act is after January 12, 2004, then
4  the department shall publish the initial consolidation list for 2004 within
5  thirty (30) calendar days after the effective date of this act.

6  6-13-1603.  Administrative reorganization.
7      (a)(1)  Any school district included in the Department of Education's
8  consolidation list pursuant to § 6-13-1602 may voluntarily agree to
9  administratively consolidate with or be annexed to another district or
10 districts in accordance with the requirements and limitations of this
11 section.

12     (2)(A)  Any school district on the consolidation list choosing to
13 voluntarily administratively consolidate or annex shall submit a petition for
14 approval to the State Board of Education by *April 1* immediately following
15 publication of the list and shall set forth the terms of the administrative
16 consolidation or annexation agreement in the plan.
17         (B)  If the petition is approved by the state board, the
18 administrative consolidation or annexation shall be completed by June 1, to
19 *be effective the July 1 immediately following the publication of the list*
20 *required under § 6-13-1602.*

21     (3)  Any school district on the consolidation list that does not
22 submit a petition pursuant to subdivision (a)(2)(A) of this section or that
23 does not receive approval by the *state board for* a voluntary consolidation or
24 annexation petition shall be administratively consolidated by the state board
25 with or into one (1) or more school districts by June 1, to be effective the
26 *July 1 immediately following the publication of the list required under § 6-*
27 *13-1602.*

28     (4)  The state board shall promptly consider petitions or move on
29 its own motion to administratively consolidate a school district on the
30 consolidation list in order to enable the affected school districts to
31 reasonably accomplish any resulting administrative consolidation or
32 *annexation by July 1 immediately following the publication of the list*
33 *required under § 6-13-1602.*

34     (5)  The state board shall not deny the petition for voluntary
35 administrative consolidation or annexation of any two (2) or more school

ADD. 4

1 districts unless:
2
3          (A)   The provisions contained in the articles of
4 administrative consolidation or annexation would violate state or federal
5 law; or
6          (B)   The voluntary consolidation or annexation would not
7 contribute to the betterment of the education of students in the districts.
8     (b)   Any school district required to be administratively consolidated
9 under this subchapter shall be administratively consolidated in such a manner
10 as to create a resulting district with an average daily membership meeting or
11 exceeding three hundred fifty (350).
12     (c)   All administrative consolidations or annexations under this
13 section shall be accomplished so as not to create a school district that
14 hampers, delays, or in any manner negatively affects the desegregation of
15 another school district in this state.
16     (d)   In the administratively consolidated or annexed school districts
17 created under this subchapter, the ad valorem tax rate shall be determined as
18 set forth under § 6-13-1409.
19     (e)   Nothing in this section shall be construed to require the closing
20 of any school or school facility.
21     (f)   No school facility in a school district included in the
22 consolidation list required by § 6-13-1602 shall be closed by the state board
23 or a local school board until after completion of an assessment of public
24 school facilities by the Joint Committee on Educational Facilities as
25 required by Act 1181 of 2003, but in no event shall any be closed prior to
26 June 1, 2005.
27     (g)   No administratively consolidated or annexed school district shall
28 have more than one (1) superintendent.
29     (h)   No school district administratively consolidated with a school
30 district designated by the state board as being in academic or fiscal
31 distress shall be subject to academic or fiscal distress sanctions for a
32 period of three (3) years from the effective date of consolidation unless:
33          (1)   The school district fails to meet minimum teacher salary
34 requirements; or
35          (2)   The school district fails to comply with the Standards for
Accreditation of Arkansas Public Schools issued by the Department of
Education.

1  *(i)   Noncontiguous school districts may voluntarily consolidate if:*

2      *(1)(A)   The facilities and physical plant of each school district*

3  *are within the same county; and*

4      *(B)   The state board approves the administrative*

5  *consolidation; or*

6      *(2)(A)   The facilities and physical plant of each school district*

7  *are not within the same county; and*

8      *(B)  The state board approves the administrative*

9  *consolidation or annexation and finds that:*

10      *(i)   The consolidation or annexation will result in*

11  *the overall improvement in the educational benefit to students in all of the*

12  *school districts involved; or*

13      *(ii)   The consolidation or annexation will provide a*

14  *significant advantage in transportation costs or service to all of the school*

15  *districts involved.*

16      *(j)   Contiguous districts may administratively consolidate even if they*

17  *are not in the same county.*

18      *(k)   The state board shall promulgate rules to facilitate the*

19  *administration of this subchapter.*

20      *(l)   The provisions of § 6-13-1406 shall govern the board of directors*

21  *of each resulting or receiving school district created under this subchapter.*

22

23      *6-13-1604.   Administrative consolidation assistance funds.*

24      *(a)   The state shall pay administrative consolidation assistance funds*

25  *to each school district that:*

26      *(1)   Is administratively consolidated or annexed by the State*

27  *Board of Education under § 6-13-1603 by July 1, 2005; or*

28      *(2)(A)   Has an average daily membership of at least three hundred*

29  *fifty (350) and no more than five hundred (500) for each of the two (2)*

30  *school years preceding the school year in which the administrative*

31  *consolidation or annexation petition is filed; and*

32      *(B)   Voluntarily petitions and receives approval from the*

33  *state board to administratively consolidate or annex prior to July 1, 2004.*

34      *(b)   Administrative consolidation assistance funds shall be paid in an*

35  *amount equal to:*

36      *(1)   Eight hundred dollars ($800) multiplied times the*

1  consolidated average daily membership; plus
2      (2)  Seven hundred dollars ($700) multiplied times the
3  consolidated national school lunch student total.
4      (c)(1)  Administrative consolidation assistance funds may be used by
5  the school districts for any purpose.
6      (2)  However, the state board by rule may require funds to be
7  expended on the construction or improvement of school facilities.
8      (d)  The funds shall be paid to the resulting administratively
9  consolidated or annexed school district during the first year of the
10  consolidated or annexed district's existence.
11
12      6-13-1605.  Charter schools.
13      The provisions of § 6-13-1601 - 1604 shall not apply to charter schools
14  in existence on the effective date of this act or to schools achieving
15  charter status by June 1, 2005.
16
17      SECTION 4.  Immediately upon the effective date of this act, the Chief
18  Fiscal Officer of the State shall transfer on his books and those of the
19  State Treasurer and the Auditor of the State the sum of thirty-seven million
20  ninety-seven thousand five hundred sixty dollars ($37,097,560) from funds
21  received from the Jobs and Growth Tax Relief Reconciliation Act of 2003,
22  Public Law 108-27 to the Department of Education Public School Fund Account
23  there to be used for the consolidation incentive provided in § 6-13-1604.
24
25      SECTION 5.  Arkansas Code Title 6, Chapter 20, Subchapter 6 is amended
26  to add an additional section t read as follows:
27      6-20-602. Isolated schools.
28      (a)  "Isolated school" means a school within a school district that:
29      (1)  Prior to administrative consolidation or annexation under
30  this act qualified as an isolated school district under § 6-20-601; and
31      (2)  Is subject to administrative consolidation or annexation
32  under this act.
33      (b)  Any isolated school within a resulting or receiving district shall
34  remain open.
35      (c)  Funding for isolated school districts shall be expended by the
36  resulting or receiving district only on the operation, maintenance, and other

1   *expenses of the isolated schools within the resulting or receiving district.*

2

3      SECTION 6.  EMERGENCY CLAUSE.  It is found and determined by the

4 General Assembly of the State of Arkansas that the Arkansas Supreme Court in

5 Lake View School District No. 25 v. Huckabee, 351 Ark. 31 (2002) declared the

6 now existing system of education to be unconstitutional because it is both

7 inequitable and inadequate; and the Arkansas Supreme Court set forth the test

8 for a constitutional system to be one in which the State has an "absolute

9 duty" to provide an "equal opportunity to an adequate education"; and the

10 Arkansas Supreme Court instructed the General Assembly to define and provide

11 what is necessary to provide an adequate and equitable education for the

12 children of Arkansas.  Therefore, an emergency is declared to exist and this

13 act being immediately necessary for the preservation of the public peace,

14 health, and safety shall become effective on:

15      (1)  The date of its approval by the Governor;

16      (2)  If the bill is neither approved nor vetoed by the Governor,

17 the expiration of the period of time during which the Governor may veto the

18 bill; or

19      (3)  If the bill is vetoed by the Governor and the veto is

20 overridden, the date the last house overrides the veto.

21

22                   */s/ Bond*

23

24

25

26          *APPROVED:*  *BECAME LAW ON 1/29/2004, WITHOUT SIGNATURE*

27

28

29

30

31

32

33

34

35

36

ADD. 8

# ARKANSAS DEPARTMENT OF EDUCATION
## RULES GOVERNING ADMINISTRATIVE CONSOLIDATION OR ANNEXATION OF PUBLIC SCHOOL DISTRICTS AND BOARDS OF DIRECTORS OF LOCAL SCHOOL DISTRICTS

1.00   PURPOSE

   1.01   These rules shall be known as the Arkansas Department of Education Rules Governing the Administrative Consolidation and Annexation of Public School Districts.

2.00   AUTHORITY

   The State Board of Education's authority for promulgation of these rules is pursuant to Ark. Code Ann. § 6-11-105, Ark. Code Ann. §§ 6-13-1601 et seq., 25-15-204 and Act 2151 of 2005.

3.00   DEFINITIONS

   3.01   "Administrative annexation" means the joining of an affected school district or a part of the school district with a receiving district.

   3.02   "Administrative consolidation" means the joining of two (2) or more school districts to create a new single school district with one (1) administrative unit and one (1) board of directors that is not required to close school facilities.

   3.03   "Affected district" means a school district that loses territory or students as a result of administrative annexation or consolidation.

   3.04   "Average daily membership" (ADM) means the total number of days attended plus the total number of days absent by students in grades kindergarten through twelve (K-12) during the first three (3) quarters of each school year divided by the number of school days actually taught in the district during that period of time rounded up to the nearest one hundredth. Students who may be counted for average daily membership are: (i) students who reside within the boundaries of the school district and who are enrolled in a public school operated by the district or a private school for special education students, with their attendance resulting from a written tuition agreement approved by the Department of Education; (ii) legally transferred students living outside the district but attending a public school in the district; and (iii) students who reside within the boundaries of the school district and who are enrolled in the Arkansas National Guard Youth Challenge Program, so long as the students are participants in the program.

ADE 217-1

3.05    "Isolated school" means a school within a school district that prior to administrative consolidation or annexation qualified as an isolated school district under A.C.A. § 6-20-601 and is subject to administrative consolidation or annexation.

3.06    "Petition for voluntary administrative annexation" means the official forms and documents published by the Department and hereby attached and incorporated into these rules as Attachment A, which are the official forms and documents necessary for school districts to properly petition the State Board for administrative annexation of a school district or districts into a receiving school district.

3.07    "Petition for voluntary administrative consolidation" means the official forms and documents published by the Department and hereby attached and incorporated into these rules as Attachment B, which are the official forms and documents necessary for school districts to properly petition the State Board for administrative consolidation of a school district or districts into a resulting school district.

3.08    "Receiving district" means a school district or districts that receive territory or students, or both, from an affected district as a result of administrative annexation.

3.09    "Resulting district" means the new school district created from an affected district or districts as a result of administrative consolidation.

4.00    PROCEDURES OF THE STATE BOARD OF EDUCATION CONCERNING VOLUNTARY ADMINISTRATIVE CONSOLIDATION OR ANNEXATION UNDER ACT 60 (SECOND EXTRAORDINARY SESSION OF 2003)

4.01    By January 1 of each year, the ADE shall publish a consolidation list that includes all school districts with fewer than three hundred fifty (350) students according to the district's average daily membership in each of the two (2) school years immediately preceding the current school year.

4.02    Any school district submitting a Petition for Voluntary Administrative Consolidation or Annexation pursuant to Act 60 may submit a single petition for State Board consideration. A school district's Petition for Voluntary Administrative Consolidation or Annexation (Petition), including all required attachments, **MUST** be received in the Office of the Commissioner, Department of Education, #4 Capitol Mall, Little Rock, AR 72201, **NO LATER THAN** 4:30 p.m. on March 1, of the year of petition. Petitions **MUST** be submitted on the proper official Department of Education petition form and attached documents hereby incorporated into these rules as Attachments A and B respectively. A school district may attach additional information to the petition form, if necessary, to

fully present its information. If mailed, the petition and all required attachments must be sent by certified mail, return receipt requested. PETITIONS RECEIVED AFTER 4:30 P.M. ON MARCH 1, OF THE YEAR OF PETITION, SHALL NOT BE CONSIDERED BY THE STATE BOARD REGARDLESS OF DATE MAILED.

4.03    While there is no provision in Act 60 that notice be published, the petitioning school districts are strongly encouraged to publish their intent to petition the State Board to consolidate or annex into a resulting or receiving school district by running said publication in a local newspaper of general circulation once a week for two (2) consecutive weeks. The petitioning parties may publish their intention to petition the State Board in a statewide newspaper of daily circulation, if the local newspaper does not publish on a daily or weekly basis.

4.04    The State Board may consider the petition at either a regular or special board meeting. All petitions for administrative consolidation or annexation timely filed with the State Board shall be heard by the State Board at either a regularly scheduled or specially called meeting after March 1, of the year of petition, with appropriate notice to all parties.

4.05    The State Board shall give at least five (5) calendar days advance written notice from the date of receipt to a petitioning school district of the date, time and place of the State Board meeting at which its petition will be considered. Notice may be provided via U.S. mail, facsimile or ADE electronic Commissioner's Memo.

4.06    At the hearing before the State Board, the order of presentation shall be as follows:

A)    Remarks by petitioning school districts' spokesperson(s);
B)    Remarks by opposing school districts and citizens' groups' spokesperson(s);
C)    Closing remarks by opposing school districts and citizen's groups' spokesperson(s); and
D)    Closing remarks by petitioning school districts' spokesperson(s).

4.07    Each petitioning school district shall have twenty (20) minutes to present the district's remarks. The district may allocate its time to one (1) or more spokespersons, but the total time allocated should not exceed twenty (20) minutes. In its sole discretion, the State Board may allow a district's spokesperson(s) more than twenty (20) minutes to speak.

4.08    Any school district or group of citizens, which opposes a petition, shall have the opportunity to present its opposition to the State Board. The State Board may, on its own motion, choose to hear from more than one

(1) spokesperson per opposing school district or group of citizens. However, the spokesperson(s) representing the opposing school district(s) or group of citizens shall have a total time allocated not to exceed twenty (20) minutes. In its sole discretion, the State Board may allow the spokesperson(s) more than twenty (20) minutes to speak.

4.09 Both the district and the opposition shall be given ten (10) minutes to present closing remarks to the State Board, allocated among one (1) or more spokesperson(s) as each side sees fit.

4.010 Time taken by a spokesperson to respond to a question by a State Board member shall not count against the respective side's time allotment.

4.11 Any documents to be considered by the State Board shall be submitted via first class mail to the Commissioner's Office at least three (3) business days prior to the State Board hearing of the petition for administrative consolidation or annexation.

4.12 The State Board shall issue a written decision approving the administrative consolidations or annexations requested in the petitions, if the petitions are granted. If the State Board denies a petition, it shall issue a written decision stating the reasons for such denial.

4.13 The State Board's written decision shall be made on or before May 1, of the year of petition.

4.14 Under no circumstances shall the State Board be obligated to grant a petition where to do so would hamper, delay, or in any manner negatively affect the desegregation efforts of any school district or districts in the state including school districts which are not petitioners for the administrative consolidation or annexation before the State Board.

4.15 If the State Board denies a school district's petition or does not receive a petition from a school district on the consolidation list, then the State Board shall, on its own motion, administratively consolidate all of the school district with or into one (1) or more other school districts by May 1, of the year of petition.

4.16 For administrative consolidations considered under the provisions of Section 4.15, the notice requirements placed upon the State Board by Section 4.05 shall not apply. Instead, the State Board shall provide such advance notice to the districts of the State Board's meeting at which the administrative consolidation will be considered as is practicable and required by law.

ADE 217-4

ADD. 12

5.00 STATE BOARD OF EDUCATION ACTION ON PETITIONS FOR ADMINISTRATIVE CONSOLIDATION OR ANNEXATION

5.01 Except as otherwise provided for in these rules or law and in addition to any other requirements herein, the State Board shall not deny a petition for voluntary administrative consolidation or annexation of any two (2) or more school districts unless:

(A) The provisions contained in the articles of administrative consolidation or annexation would violate state or federal law; or

(B) The voluntary administrative consolidation or annexation would not contribute to the betterment of the education of students in the districts; or

(C) The proposed consolidation or annexation does not result in a resulting or receiving school district with an average daily membership meeting or exceeding three hundred fifty (350) based upon the prior year third (3rd) quarter average daily membership.

In making a determination under (B) of Section 5.01, certain considerations will be taken into account by the State Board. The State Board will consider the extent to which the respective districts are or have been in compliance with certain provisions of Arkansas law or State Board rules, including academic and fiscal distress, Standards for Accreditation, and Arkansas teacher salary schedules.

For those resulting or receiving districts in compliance with Section 5.01 (C), the projected ADM of the proposed resulting or receiving district shall not be a factor in making the determination to approve or deny the petition for administrative consolidation or annexation.

If the State Board, after consideration of the petition and the evidence produced at the hearing, shall determine that significant reason(s) exist why the proposed administrative consolidation or annexation would not contribute to the betterment of the education of the students in the districts, it may deny the petition and shall state its specific findings in the order entered in the proceedings.

5.02 Prior to the entry of any order approving a petition for administrative consolidation or annexation, the State Board shall seek an advisory opinion from the Attorney General concerning the impact of the proposed annexation or consolidation on the effort of the state to assist a district or districts in desegregation of the public schools of this state.

5.03 In addition to all other requirements in these rules, the State Board shall not approve any petition nor order any annexation or consolidation of school districts when the effect of such annexation or consolidation

ADE 217-5

ADD. 13

hampers, delays, or in any manner negatively affects the desegregation efforts of a school district or districts in this state.

5.04     In addition to the standards set forth in Section 5.01 of these rules, noncontiguous school districts may voluntarily consolidate if:

       (A)(1)   The facilities and physical plant of each school district are within the same county, and

          (2)   The State Board approves the administrative consolidation, or

       (B) (1)   The facilities and physical plant of each school district are not within the same county, and

          (2)   The State Board approves the administrative consolidation or annexation and finds that:

                (i)     (i)     The consolidation or annexation will result in the overall improvement in the educational benefit to students in all of the school districts involved, or

                (ii)    (ii)     The consolidation or annexation will provide a significant advantage in transportation costs or service to all of the school districts involved.

5.05     If the resulting district in an administrative consolidation fails to establish an interim school board by May 31 of the year of petition, the State Board shall appoint an interim board to serve until the next elected school board assumes office, in the following manner:

       (A)     The interim board shall be made up of seven (7) board members;

       (B)     The interim board shall be made up of board members from the boards of directors of the affected school districts;

       (C)     The proportion of board members from each of the affected school districts shall be equal to the proportion of the student population in the resulting school district that came from each affected school district, with no less than one (1) board member being selected from the board of each affected school district;

       (D)     Unless provided otherwise by the State Board, the board membership of each interim resulting school district under Section 5.05 shall be selected first of the board presidents; second, board secretaries; and third, any other remaining current local board members selected by the State Board;

       (E)     The interim board shall have no authority to govern the resulting consolidated school district until the July 1 effective date of the consolidation; and

       (F)     The interim board shall serve until the new school board directors have been sworn in and commissioned after the September school board election immediately following the effective date of the consolidation unless the resulting district opts to follow the procedures set forth in Section 2 of Act 274 of 2005.

5.06    If the resulting district in an administrative consolidation voluntarily agrees to establish an interim school board by May 31, of the year of petition, the board shall be selected as follows:

    (A)    The board of directors of the affected districts may by agreement establish an interim board of directors of the resulting district composed of not fewer than five (5) nor more than seven (7) directors;

    (B)    The proportion of board members from each of the affected school districts shall be equal to the proportion of the student population in the resulting school district that came from each affected school district, with no less than one (1) board member being selected from the board of each affected school district;

    (C)    The board of each affected school district shall select the board members that it wishes to have placed on the interim board of the resulting district. If the affected district is unable to select membership by a majority vote of the local board, the affected district(s) may select members to the interim resulting board by drawing lots.

    (D)    The interim board shall have no authority to govern the resulting consolidated school district until the July 1 effective date of the consolidation; and

    (E)    The interim board shall serve until the new school board directors have been sworn in and commissioned after the September school board election immediately following the effective date of the consolidation unless the resulting district opts to follow the procedures set forth in Section 2 of Act 274 of 2005.

5.07    If a school district fails to petition the State Board for administrative consolidation or annexation as required by A.C.A. § 6-13-1603(a)(2)(A) or the State Board denies a petition for administrative consolidation or annexation, the State Board shall, on its own motion, administratively consolidate a school district with or into any one (1) or more school districts in Arkansas by May 1, and the administrative consolidation shall be effective the July 1 immediately following the publication of the list required under A.C.A. § 6-13-1602.

5.08    The State Board shall promptly consider petitions or move on its own motion to administratively consolidate a school district on the consolidation list in order to enable the affected school districts to reasonably accomplish any resulting administrative consolidation or annexation by July 1 immediately following the publication of the list required under A.C.A. § 6-13-1602.

5.09    Upon approving a petition for administrative consolidation or annexation
or acting on its own motion to administratively consolidate school
districts, the State Board shall prepare a written order of administrative
consolidation or annexation and file such order with the county clerk's
office of each county clerk in the counties where the resulting or receiving
school district is located.

5.10    The State Board shall not order the closing of any isolated school facility
as a result of an administrative consolidation or annexation of an isolated
school except as allowed by law.

5.11    The board of directors of any receiving school district created after an
administrative annexation (whether interim or permanent) shall be in
compliance with A.C.A. § 6-13-1406 and Act 274 of the Arkansas 85th
General Assembly.

6.00    GENERAL PROVISIONS GOVERNING ADMINISTRATIVE
CONSOLIDATIONS OR ANNEXATIONS

6.01    All administrative consolidations or annexations shall be accomplished so
as not to create a school district that hampers, delays, or in any manner
negatively affects the desegregation of another school district in this state.

6.02    The millage rate of the electors of the affected districts of an
administrative consolidation or annexation shall remain the same until an
election may be held to change the rate of taxation for the resulting or
receiving district.

6.03    No administrative consolidation or annexation shall be construed to
require the closing of any school or school facility except as allowed by
law.

6.04    All resulting or receiving school districts created from an administrative
consolidation or annexation shall have no more than one (1)
superintendent and no more than one (1) local school board.

6.05    Any school district not designated as being in academic or fiscal distress
for the current school year and previous two (2) school years that
administratively receives by consolidation or annexation a school district
classified by the State Board as being in academic or fiscal distress at the
time of the consolidation or annexation shall not be subject to academic or
fiscal distress sanctions for a period of three (3) years from the July 1
effective date of consolidation unless:

    (A)    The school district fails to meet minimum teacher salary
requirements set forth in law and rules; or

ADE 217-8

ADD. 16

(B)     The school district fails to comply with the Standards for
Accreditation of Arkansas Public Schools issued by the
Department of Education.

6.06    The provisions of A.C.A. § 6-13-1406, Act 25 of the Second
Extraordinary Session 2003 and Act 2151 of 2005 shall govern the board
of directors of each resulting or receiving school district created from an
administrative consolidation or annexation.

## 7.00    ISOLATED SCHOOLS

7.01    Prior to July 1, 2004, and each July 1 thereafter, the Department shall
determine which schools meet the definition of "isolated schools" based
upon the verified information submitted in the district's petition for
administrative consolidation or annexation or based upon relevant data
submitted to the Department pursuant to A.C.A. § 6-20-601 and 602.

7.02    Any isolated school within a resulting or receiving school district shall
remain open except as allowed by law.

7.03    Funding for isolated schools shall be expended by the resulting or
receiving district only on the operation, maintenance, and other expenses
of the isolated schools within the resulting or receiving school district.

## 8.0     BOARDS OF DIRECTORS OF LOCAL SCHOOL DISTRICTS

8.01    All boards of directors of local school districts shall be made up of
five (5), seven (7) or nine (9) members as allowed by law, unless the
school district is under a valid court order otherwise directing the number
and composition of the local board.

8.02    No board of directors shall have an even number of directors whether or
not the number of directors of a school district's board of directors was
established by an agreement between or among the former school districts,
which comprise the school district incident to a consolidation or
annexation of the former school districts.

8.03    No less than ninety (90) days prior to the 2005 annual school election, any
school district with an even number of directors shall file a petition with
the State Board of Education to establish the requisite odd number of
directors.

8.04    If the number of board members needs to be reduced to create a required
odd number of directors and the members cannot agree on the method of
reduction, the board of directors in office as of August 12, 2005, shall
draw lots to determine which board positions will be eliminated.

8.05    Any change in the number of directors serving on the local school district board of directors required by Arkansas law and these Rules shall be effective upon the directors' taking office following the 2005 annual school election.

8.06    Except as otherwise provided by law, any school district which elects its school board members from single-member zones shall be subject to the requirements of these Rules.